UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

TELETIES, LLC,

     Plaintiff,

v.                                                     Case No: 6:25-cv-539-JSS-RMN

DEFENDANTS #1-18 AS
IDENTIFIED IN SCHEDULE "A,"

     Defendants.
_____/

## ORDER

Plaintiff sues Defendants under the Patent Act, 35 U.S.C. §§ 1–390, for their alleged infringement of a hair clip design patented under United States Design Patent Number D1,031,161 and moves ex parte for a temporary restraining order (TRO) including an asset freeze and for alternative service and expedited discovery. (*See* Dkts. 1, 13.) Upon consideration of the record, the court grants the motion in part and denies it in part.

## BACKGROUND

In its complaint, Plaintiff asserts one count of patent infringement in violation of 35 U.S.C. § 271 against Defendants, which Plaintiff claims are "individuals or business entities who reside in or are headquartered in the People's Republic of China." (Dkt. 1 ¶¶ 3, 23–38.) Plaintiff seeks injunctive and monetary relief including its legal fees. (*Id.* ¶¶ 31–38.)

Patent records attached as Exhibit B to the complaint show that the design patent was issued on June 11, 2024, is called "FLAT HAIR CLIP," and claims "[t]he

ornamental design for a flat hair clip, as shown and described" in the records.  (Dkt. 1-3 at 2.)  Plaintiff's founder and president, Lindsay Muscato, declares that Plaintiff "has continuously held title in the . . . [p]atent from [the patent's] issuance until the present" and that Plaintiff "is and remains the sole owner of all right, title, and interest in and to the . . . [p]atent."  (Dkt. 13-1 ¶¶ 3, 5.)  According to Ms. Muscato, Plaintiff has never licensed the patent to anyone, including Defendants.  (*Id.* ¶¶ 8–9.)  Ms. Muscato states that as the patent's exclusive owner, Plaintiff "sells hair clips that embody the ornamental design of the . . . [p]atent throughout the United States, including . . . through its own online storefront and on . . . Amazon.com."  (*Id.* ¶ 7.)

Plaintiff alleges that Defendants are knowingly and willfully making, using, offering for sale, selling, and importing into the United States for subsequent sale and use hair clips that infringe the patent.  (Dkt. 1 ¶ 21.)  Defendants purportedly use Amazon.com to commit the infringement.  (*See* Dkt. 10.)  Exhibit A to the complaint (also referred to as Schedule "A") identifies Defendants by providing their sold-by names, seller business names, product Amazon Standard Identification Numbers (ASINs), and product and seller-storefront links, which are Amazon.com web addresses.  (*Id.*)  A chart supporting Plaintiff's TRO motion displays Defendants' allegedly infringing products side by side with images from Plaintiff's patent.  (*See* Dkt. 13-2.)  Review of the chart reveals that for each of Defendants' products, the product's design is substantially similar to the design protected by the patent.  (*Id.*)

According to Ms. Muscato, Plaintiff believes that Defendants "are interrelated or are otherwise working in concert to infringe the . . . [p]atent by having Chinese-

based manufactures copy the molds for the design protected by the . . . [p]atent and to import the infringing products into the United States through drop shipments after the infringing products are sold on Amazon.com." (Dkt. 13-1 ¶ 10.) Ms. Muscato declares that Defendants are "causing significant harm to" Plaintiff by "sell[ing] their infringing products at a significantly reduced price" and thus "divert[ing] consumers away from" Plaintiff, as Plaintiff and Defendants both use Amazon.com to sell products with a design protected by the patent. (*Id.* ¶¶ 12–13.) Ms. Muscato further states that Defendants use "inferior materials" to make their products and that Plaintiff's goodwill has been "negatively impact[ed]" as a result. (*Id.* ¶ 14.)

## APPLICABLE STANDARDS

Federal Rule of Civil Procedure 65 governs TROs. *See* Fed. R. Civ. P. 65(b)–(d). The court cannot grant a plaintiff's motion for a TRO without notice to the defendant unless "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the [plaintiff] before the [defendant] can be heard in opposition" and the plaintiff's "attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). "Every [TRO] issued without notice must state the date and hour it was issued[,] describe the injury and state why it is irreparable[,] state why the order was issued without notice[,] and be promptly filed in the [C]lerk's [O]ffice and entered in the record." Fed. R. Civ. P. 65(b)(2). "The [TRO] expires at the time after entry—not to exceed [fourteen] days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the [defendant] consents to a longer

extension." *Id.* The Supreme Court has explained that such ex parte TROs "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974).

Whether issued with or without notice, "every [TRO] must . . . state the reasons why it issued[,] . . . state its terms specifically[,] and . . . describe in reasonable detail— and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). Rule 65 further states: "The court may issue . . . a [TRO] only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully . . . restrained." Fed. R. Civ. P. 65(c); *accord* M.D. Fla. R. 6.01(a)(4) (requiring a TRO motion to "include . . . a precise and verified explanation of the amount and form of the required security"). However, the "court has [the] discretion to waive [the security] requirement imposed by Rule 65(c)." *Disability Rts. Fla., Inc. v. Jacobs*, 473 F. Supp. 3d 1335, 1340 (M.D. Fla. 2019) (citing *Baldree v. Cargill, Inc.*, 758 F. Supp. 704, 707–08 (M.D. Fla. 1990), *aff'd*, 925 F.2d 1474 (11th Cir. 1991)).

A TRO "is appropriate only if the movant demonstrates . . . '(1) a substantial likelihood of success on the merits[,] (2) that the [TRO] is necessary to prevent irreparable injury[,] (3) that the threatened injury outweighs the harm the [TRO] would cause the other litigant[s,] and (4) that the [TRO] would not be averse to the public interest.'" *Wellons v. Comm'r, Ga. Dep't of Corr.*, 754 F.3d 1260, 1263 (11th Cir.

2014) (quoting *Chavez v. Fla. SP Warden*, 742 F.3d 1267, 1271 (11th Cir. 2014)); *accord* M.D. Fla. R. 6.01(b).  A TRO "is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to each of the four prerequisites."  *Wall v. Ctrs. for Disease Control & Prevention*, 543 F. Supp. 3d 1290, 1292 (M.D. Fla. 2021) (alteration adopted and quotations omitted).

Relatedly, a "request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief."  *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 987 (11th Cir. 1995).  An order freezing assets should provide a procedure for the person whose assets are frozen to petition the court to modify the asset freeze.  *See id.* at 987–88 (affirming an asset freeze in a trademark infringement case because the asset freeze "expressly allowed [the defendants] to petition the district court to modify the freeze" (citing *Fed. Trade Comm'n v. Atlantex Assocs.*, 872 F.2d 966, 970–71 (11th Cir. 1989))).

Federal Rule of Civil Procedure 4(h)(2) governs service on foreign businesses and provides that they "must be served . . . in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under [Rule 4](f)(2)(C)(i)."  Fed. R. Civ. P. 4(h)(2).  In turn, Rule 4(f) permits service by "means not prohibited by international agreement, as the court orders."  Fed. R. Civ. P. 4(f)(3).  Accordingly, service on a foreign business or individual "may be accomplished under Rule 4(f)(3) as long as" the means of service are "ordered by the court" and are "not prohibited by an international agreement."  *U.S. Commodity Futures Trading Comm'n v. Aliaga*, 272

F.R.D. 617, 619 (S.D. Fla. 2011). "Under [Rule] 4(f)(3), 'courts have authorized a wide variety of alternative methods of service including . . . email.'" *TracFone Wireless, Inc. v. Hernandez*, 126 F. Supp. 3d 1357, 1364 (S.D. Fla. 2015) (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002)); *accord Aliaga*, 272 F.R.D. at 619 ("Courts have permitted alternative service of process through various means, including by e[]mail . . . .").

Federal Rule of Civil Procedure 26 generally governs discovery and states: "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). A court "has the discretion to order expedited discovery if the party seeking it establishes 'good cause.'" *Centennial Bank v. ServisFirst Bank Inc.*, No. 8:16-cv-88-T-36JSS, 2016 U.S. Dist. LEXIS 203675, at *7 (M.D. Fla. Jan. 29, 2016) (quoting *TracFone Wireless, Inc. v. Adams*, 304 F.R.D. 672, 673 (S.D. Fla. 2015)).

## ANALYSIS

The court addresses the TRO and the related topics of assert freeze and security before turning to the issues of alternative service and expedited discovery.

### 1. TRO, Asset Freeze, and Security

The court discusses the four requirements for a TRO—likelihood of success on the merits, irreparable injury, balance of harms, and public interest—and then explains why both an asset freeze and security are warranted.

### a. Likelihood of Success on the Merits

The Patent Act permits courts to "grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. "In seeking a [TRO] pursuant to section 283, a patent holder must establish a likelihood of success on the merits both with respect to validity of its patent and with respect to infringement of its patent." *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451 (Fed. Cir. 1988).

The Patent Act creates a presumption of validity for a patent. 35 U.S.C. § 282(a) ("A patent shall be presumed valid. . . . The burden of establishing invalidity of a patent . . . shall rest on the party asserting such invalidity."). "In the context of a [TRO], while the burden of proving invalidity is with the party attacking validity, the party seeking the [TRO] retains the burden of showing a reasonable likelihood that the attack on its patent's validity would fail." *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003) (quotation omitted). Plaintiff has met that burden by showing that the patent went through a rigorous examination, with the examiner considering numerous references. (*See* Dkt. 1-3 at 2–3; Dkt. 13 at 6.) *See Grinnell Corp. v. Am. Monorail Co.*, 285 F. Supp. 219, 225 (D.S.C. 1967) ("It is abundantly evident from the file history of the . . . patent that the application was subjected to rigorous examination. . . . Thus[,] the . . . application is entitled fully to the presumption of validity accorded by the statute . . . .").

A defendant infringes a design patent when "during the term" of the patent, "without license of the owner," the defendant either "applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale"

- 7 -

or "sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied." 35 U.S.C. § 289. "Determining whether a design patent is infringed is a two-step process. First, when appropriate, the design patent's claims are construed. Second, the patented design is compared to the" allegedly infringing product. *XYZ Corp. v. Individuals*, 668 F. Supp. 3d 1268, 1273–74 (S.D. Fla. 2023) (quoting *Pride Fam. Brands, Inc. v. Carl's Patio, Inc.*, 992 F. Supp. 2d 1214, 1223–24 (S.D. Fla. 2014)). As to the first step, claim construction, "a design is better represented by an illustration 'than it could be by any description[,] and a description would probably not be intelligible without the illustration.'" *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc) (quoting *Dobson v. Dornan*, 118 U.S. 10, 14 (1886)). Thus, here, the court looks to the images in Plaintiff's patent to construe the claim. (*See* Dkt. 1-3.)

As to the second step, comparison, "[t]he 'ordinary observer' test is the sole test for determining whether a design patent has been infringed." *XYZ*, 668 F. Supp. 3d at 1274 (quoting *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Access., Inc.*, 942 F.3d 1119, 1129 (Fed. Cir. 2019)). Under this test, "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Gorham Co. v. White*, 81 U.S. 511, 528 (1871). Minor differences between a patented design and an allegedly infringing design do not foreclose a finding of infringement. *See Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir.

2010).  Based on Plaintiff's chart offering side-by-side comparisons of Defendants' products and Plaintiff's patent, (*see* Dkt. 13-2), the court concludes, in view of the products' curves, prongs, overall shapes, and other design features, that under the "ordinary observer" test, Defendants' products are substantially similar to the design protected by the patent.

Plaintiff can likely establish the validity of its design patent as well as Defendants' infringement of the patent.  Accordingly, Plaintiff has demonstrated a substantial likelihood of success on the merits to obtain a TRO.

### b.  Irreparable Injury

For the irreparable injury requirement, the party seeking the TRO must establish that "the injury is immediate and is not compensable by monetary damages. Even when considered under traditional equitable rules, however, the existence of a likely infringer in the market may" satisfy this requirement "because of the difficulty of protecting a right to exclude through monetary remedies."  *Tiber Labs., LLC v. Hawthorn Pharms., Inc.*, 527 F. Supp. 2d 1373, 1381 (N.D. Ga. 2007) (quotation omitted).  Plaintiff has identified Defendants as multiple likely infringers sharing an online market with Plaintiff and has submitted evidence that Defendants are causing Plaintiff harm by using inferior materials—to the detriment of Plaintiff's goodwill—to sell products at reduced prices, thereby diverting consumers from Plaintiff.  (Dkt. 13-1 ¶¶ 11–15.)  Consequently, Plaintiff has shown that a TRO is required to prevent irreparable injury.  *See Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) ("[T]he loss of customers and goodwill is an 'irreparable' injury.").

### c. Balance of Harms

Requiring a patent holder "to compete against its own patented" product such that irreparable injury occurs "places a substantial hardship" on the patent holder. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011). In contrast, "an infringer of [intellectual property] cannot complain about the loss of ability to offer its infringing product." *WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594, 621 (S.D.N.Y. 2011) (collecting cases); *accord i4i L.P. v. Microsoft Corp.*, 598 F.3d 831, 863 (Fed. Cir. 2010) ("The district court's analysis [of the balance of harms] properly ignored the expenses [the defendant] incurred in creating the infringing products. Similarly irrelevant are the consequences to [the defendant] of its infringement, such as the cost of redesigning the infringing products. . . . [N]either commercial success, nor sunk development costs, shield an infringer from injunctive relief. [The defendant] is not entitled to continue infringing simply because it successfully exploited its infringement." (citations omitted)). Accordingly, because Plaintiff has shown a substantial likelihood that it is competing in its online marketplace against products—sold by Defendants—that infringe its patented design, Plaintiff has established that its threatened injuries outweigh the harms that a TRO would cause Defendants. *See XYZ*, 668 F. Supp. 3d at 1276 ("[The p]laintiff faces hardship from loss of sales and his inability to control his reputation in the marketplace. By contrast, [the d]efendants face no hardship if they are prohibited from the infringement of [the p]laintiff's copyrights and patents which [consists of] illegal acts.").

### d. Public Interest

Given "the importance of the patent system in encouraging innovation," *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006), the public has a "general interest in upholding patent rights," *i4i*, 598 F.3d at 863. Further, as Plaintiff explains, absent a TRO, consumers "will continue to be confused and misled by the infringing acts of Defendants[,] and the market will be flooded with inferior infringing products." (Dkt. 13 at 9.) Because "the public interest is served by preventing consumer confusion in the marketplace," *Davidoff & Cie, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001), Plaintiff has demonstrated that a TRO preventing Defendants from infringing Plaintiff's design patent would serve the public interest. *Cf. Alston v. www.calculator.com*, 476 F. Supp. 3d 1295, 1323 (S.D. Fla. 2020) ("[W]hen a trademark is shown to have been infringed, the public's right to be free of confusion . . . is infringed[,] too[.]" (citation omitted)).

### e. Asset Freeze

By satisfying the requirements for likelihood of success, irreparable injury, balance of harms, and public interest, Plaintiff has established the need for a TRO. *See Wellons*, 754 F.3d at 1263; *Wall*, 543 F. Supp. 3d at 1292. To maintain the status quo, Plaintiff moves to freeze Defendants' assets related to the allegedly infringing products that Defendants sell through Amazon.com as indicated by Exhibit A to the complaint. (Dkt. 13 at 9–10; *see* Dkt. 10.)

When a plaintiff seeks equitable relief, a court can order an asset freeze "to assure the availability of permanent relief," *Levi Strauss*, 51 F.3d at 987, and "the district courts' equitable powers [to freeze assets] apply even more broadly when the

public interest is involved," *AT&T Broadband v. Tech Commc'ns, Inc.*, 381 F.3d 1309, 1317 (11th Cir. 2004). Here, the remedies sought in the complaint include equitable relief: namely, temporary, preliminary, and permanent injunctive relief to restrain Defendants from infringing, and assisting others in infringing, Plaintiff's design patent and to prevent non-party financial service providers, e-commerce platforms, web hosts, search engines, and the like from facilitating Defendants' infringement. (Dkt. 1 ¶¶ 32–33.) Further, Plaintiff states that it "intends to seek the equitable relief of an accounting of Defendants['] profits," (Dkt. 13 at 9), to support its prayer for monetary "damages under . . . 35 U.S.C. § 289," (Dkt. 1 ¶ 34). *See* 35 U.S.C. § 289 (making the infringer of a design patent "liable to the owner [of the patent] to the extent of [the infringer's] total profit, but not less than $250, recoverable in any United States district court having jurisdiction of the parties"); *see also Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1355–59 (11th Cir. 2019) (explaining that an accounting of profits is an equitable remedy).

Plaintiff maintains that "[i]n light of the strong likelihood that [D]efendants infringe the . . . [p]atent, [Plaintiff] has a good[-]faith belief that . . . Defendants will off-shore or hide their ill-gotten assets beyond the jurisdiction of this [c]ourt unless those assets are restrained." (Dkt. 13 at 10.) The court agrees that an asset freeze is warranted. *See Purple Innovation, LLC v. Individuals*, No. 24-24008-CIV-MARTINEZ, 2024 U.S. Dist. LEXIS 239537, at *8 (S.D. Fla. Oct. 25, 2024) (granting an asset freeze sought in an ex parte TRO motion and reasoning: "In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that [the d]efendants have

violated federal trademark and patent laws, [the p]laintiff has good reason to believe [the d]efendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this [c]ourt unless those assets are restrained."). The public's interests in enforcing patent rights and counteracting consumer confusion, discussed above, lend additional support to this asset-freeze determination. *See AT&T*, 381 F.3d at 1317.

Any person whose assets are frozen pursuant to this order may petition the court to modify the asset freeze by filing a motion in this case in compliance with the Local Rules. *See Levi Strauss*, 51 F.3d at 987–88; *Purple Innovation*, 2024 U.S. Dist. LEXIS 239537, at *14 ("Any [d]efendant or financial institution account holder subject to this [o]rder may petition the [c]ourt to modify the asset restraint set out in this [o]rder[.]").

### f. Security

Plaintiff asks the court to waive Rule 65(c)'s security requirement for four reasons: (1) "the only loss Defendants would have" if a TRO is granted "is their inability to continue their illicit activities," (2) "any financial loss to Defendants would pale in comparison to the loss [Plaintiff] is suffering as a result of the infringement," (3) the security requirement "would pose an undue hardship on" Plaintiff, which "is already spending significant time and financial resources to seek redress from this [c]ourt" and plans to spend the same to enforce the court's orders, and (4) in general, requiring security in patent cases like this case "would negatively affect the enforcement of federal patent rights" by increasing enforcement costs. (Dkt. 13 at 10–11.) The court understands Plaintiff's position but sets a $10,000 security requirement consistent with similar injunctions. *See, e.g.*, *Wearable Shoe Tree, LLC v. Individuals*, No.

1:23-cv-24461-PCH-EGT, 2023 U.S. Dist. LEXIS 234582, at *18 (S.D. Fla. Dec. 1, 2023) (requiring $10,000 in security); *Betty's Best, Inc. v. Individuals*, No. 23-22322-CV-WILLIAMS, 2023 U.S. Dist. LEXIS 179530, at *2 (S.D. Fla. Sept. 1, 2023) (same); *Lead Creation Inc. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 8:23-cv-49-CEH-CPT, 2023 U.S. Dist. LEXIS 25025, at *20 (M.D. Fla. Feb. 14, 2023) (same); *CreeLED, Inc. v. Individuals*, No. 8:22-cv-2379-MSS-TGW, 2022 U.S. Dist. LEXIS 239482, at *15 (M.D. Fla. Dec. 2, 2022) (same); *Ain Jeem, Inc. v. Individuals*, No. 8:21-cv-01261-VMC-JSS, 2021 U.S. Dist. LEXIS 227249, at *17 (M.D. Fla. June 1, 2021) (same).

## 2. Alternative Service and Expedited Discovery

The court considers Plaintiff's requests for alternative service and expedited discovery in turn.

### a. Alternative Service

Plaintiff moves for leave to serve Defendants using email or similar means of electronic publication. (Dkt. 13 at 11–12.) Plaintiff explains that because Defendants use Amazon.com to sell the allegedly infringing products and Amazon.com requires sellers to sign up using an email address, Defendants have email addresses on file with Amazon.com. (*Id.*) *See Seller Registration Guide*, Amazon.com, https://sell.amazon.com/sell/registration-guide (last visited Apr. 9, 2025) ("If you have an Amazon customer account, you can create your selling account using the same *email address* and password. . . . If you don't have an Amazon customer account or prefer to create a selling account using different credentials, . . . enter your first and

last name, *email address*, and password [on a page for creating an Amazon account]."

(emphasis added)).  Plaintiff describes Defendants as "individuals or business entities

who reside in or are headquartered in the People's Republic of China."  (Dkt. 1 ¶ 3.)

As foreign businesses or individuals, Defendants may be served under Rule 4(f)(3).  *See*

Fed. R. Civ. P. 4(f)(3), (h)(2); *Hernandez*, 126 F. Supp. 3d at 1364; *Aliaga*, 272 F.R.D.

at 619.

Three factors guide the court's determination of whether to permit alternative

service of process in this case:

> First, the [c]ourt must be satisfied that the proposed method of service is
> reasonably calculated, under all the circumstances, to apprise interested
> parties of the pendency of the action and afford them an opportunity to
> present their objections.  Second, the [c]ourt must determine if the
> proposed method of service minimizes offense to foreign law.  Third, the
> [c]ourt must determine if the facts and circumstances warrant exercise of
> its discretion under [Rule] 4(f).

*Hernandez*, 126 F. Supp. 3d at 1364 (quotations and citations omitted).  Here, all three

factors counsel in favor of alternative service.  First, serving Defendants through the

email addresses they use to do business on Amazon.com is reasonably calculated to

apprise them of this case in accordance with due process.  *See Liangsword Ltd. v. P'ships*,

No. 24-60618-CIV-SINGHAL, 2024 U.S. Dist. LEXIS 132908, at *5 (S.D. Fla. May

14, 2024) (authorizing electronic service under Rule 4(f)(3) when the defendants

"use[d] at least one known and valid form of electronic contact to conduct their

internet-based businesses").  Second, service by email is not offensive to Chinese law.

*See Hernandez*, 126 F. Supp. 3d at 1365 ("[A] proposed alternative method of service

of process is not offensive to the forum's law if such method is not expressly prohibited

by the forum's law." (quotation omitted)); *Int'l Watchman, Inc. v. Individuals*, No. 24-cv-22046-JB, 2024 U.S. Dist. LEXIS 157001, at *3–5 (S.D. Fla. June 17, 2024) (authorizing service by email and electronic publication on Chinese defendants because China "has not expressly objected to" those forms of service); *see also XYZ Corp. v. Individuals*, No. 0:24-cv-61886, 2024 U.S. Dist. LEXIS 241312, at *4–5 (S.D. Fla. Dec. 2, 2024) (explaining that the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters does not prohibit service by email on Chinese defendants).  Third, the frequently anonymous and pseudonymous nature of the online marketplace means that service under Rule 4(f)(3) is merited.  *See Gold Wing Trading Inc. v. Individuals*, No. 23-cv-60849-MIDDLEBROOKS, 2023 U.S. Dist. LEXIS 219311, at *4 (S.D. Fla. Oct. 20, 2023) ("[S]ervice by email and website is appropriate under the circumstances due to the hidden identity of the operators behind the e-commerce platforms.").  Accordingly, the court grants Plaintiff's request for alternative service.

### b. Expedited Discovery

Plaintiff seeks expedited discovery so it can identify Defendants through the accounts associated with the purported infringement and can serve Defendants via email or similar means of electronic publication based on the information discovered. (Dkt. 13 at 12–13.)  When deciding whether parties have shown good cause for expedited discovery, courts typically consider five factors: "(1) whether a motion for preliminary injunction [or TRO] is pending[,] (2) the breadth of the requested discovery[,] (3) the reason(s) for requesting expedited discovery[,] (4) the burden on

the [opposing party] to comply with the request for discovery[,] and (5) how far in advance of the typical discovery process the request is made." *Thyssenkrupp Elevator Corp. v. Hubbard*, No. 2:13-cv-202-Ftm-29SPC, 2013 U.S. Dist. LEXIS 66949, at *2 (M.D. Fla. May 10, 2013). Here, although the request for expedited discovery comes well in advance of the typical discovery process, the factors nonetheless support expedited discovery because Plaintiff's request for a TRO is granted in this order, the discovery sought is narrowly tailored to identify and serve Defendants, and the burden to produce the discovery is relatively low. *See XYZ Corp. v. Individuals*, No. 23-cv-24366-BLOOM/Torres, 2024 U.S. Dist. LEXIS 165815, at *5 (S.D. Fla. Jan. 2, 2024) (granting the plaintiff's motion for expedited discovery when the plaintiff sought "only to obtain information to identify [the d]efendants and the accounts used in the [purported patent] infringement in order to properly serve [the d]efendants"); *Shenzhen Dejiayun Network Tech. Co., LTD v. Doe*, No. 8:20-cv-2760-T-33CPT, 2021 U.S. Dist. LEXIS 138121, at *1, *3 (M.D. Fla. Feb. 3, 2021) (permitting expedited discovery because the plaintiff did not know the defendants' identities or contact information and the plaintiff's discovery request was specific and necessary to serve the defendants, who allegedly infringed on the plaintiff's trademark with inferior products that they sold online).

## CONCLUSION

Accordingly:

1. Plaintiff's motion (Dkt. 13) is **GRANTED in part and DENIED in part**. Plaintiff's request that the court waive Rule 65(c)'s security requirement is

**denied**.  The motion is otherwise **granted** as set forth in this order.

2.  Given the irreparable injury that will result to Plaintiff and to consumers before
    Defendants can be heard and the likelihood that if notified of Plaintiff's TRO
    request, Defendants will control their assets and products in ways that allow
    them to keep infringing, the following ex parte TRO is **ENTERED**:

**TEMPORARY RESTRAINING ORDER**

1.  Defendants, their respective officers, directors, employees, agents, subsidiaries,
    and distributors, and all other persons in active concert or participation with
    Defendants are temporarily restrained from

    a.  manufacturing, importing, advertising, promoting, offering to sell,
        selling, distributing, or transferring any products bearing the ornamental
        design embodied in Plaintiff's patent (Patent Number D1,031,161),
        including any reproduction, copy, or colorable imitation thereof;

    b.  communicating, directly or indirectly, with any person or persons

        i.   from whom Defendants purchased or obtained products bearing
             the ornamental design embodied in the patent,

        ii.  to whom Defendants sold or offered to sell these products, or

        iii. whom Defendants know or reasonably believe to possess, control,
             or have access to any of these products;

    c.  otherwise communicating, directly or indirectly, about this action with
        any person, except for Defendants' legal representation;

    d.  secreting, concealing, destroying, selling off, transferring, or otherwise

- 18 -

disposing of

    i. any products not manufactured or distributed by Plaintiff that bear the ornamental design embodied in the patent or

    ii. any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing the ornamental design embodied in the patent; and

  e. knowingly instructing, aiding, or abetting any other person in engaging in any of the activities referred to in a. through d. above.

2. During the pendency of this action or until further order of the court, each Defendant shall not transfer any ownership interest of a business if that business has in any way used Amazon.com with respect to products bearing the ornamental design embodied in Plaintiff's patent, including any reproduction, copy, or colorable imitation thereof.

3. Upon receiving notice of this temporary restraining order, Defendants and any third-party financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms who are providing services for any Defendant, including but not limited to Amazon, Amazon Pay, and PayPal and their related companies and affiliates (collectively, the third-party providers) shall, within five business days after receipt of notice of this order,

  a. restrain the transfer of all funds, including funds relating to ongoing account activity, held or received for Defendants' benefit or to be transferred into Defendants' respective financial accounts, restrain any

other financial accounts tied thereto, and immediately divert those restrained funds to a holding account for the trust of the court. Such restraining of the funds and the disclosure of the related financial institution account information (as provided below) shall be made without notice to the account owners or the financial institutions until after those accounts are restrained. No funds restrained by this order shall be transferred or surrendered by any third-party provider for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this court.

b. provide Plaintiff expedited discovery of

    i. the identity of all financial accounts and subaccounts associated with the stores operating under the identifying information seen in Exhibit A to the complaint, as well as any other accounts of the same customers,

    ii. all known contact information for Defendants, including their identities, locations, aliases, and email addresses, and

    iii. an accounting of the total funds restrained and identities of the financial accounts and subaccounts for which the restrained funds are related.

4. Any Defendant, third-party provider, or other person subject to this order may petition the court to modify the asset freeze set forth in this order by filing in

this case a motion that complies with the Middle District of Florida Local Rules.

5.  The Clerk of the Court is directed to issue a single original summons in the name of "Defendants #1–18 Identified in Schedule 'A' of the Complaint" that shall apply to all Defendants.  The combination of providing notice via email or similar means of electronic publication, along with any notice that Defendants receive from Amazon or payment processors, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and to allow them to express their objections.

6.  This order shall apply to all seller accounts, seller identification names, e-commerce stores, domain names, websites, and financial accounts which Defendants are allegedly using to infringe Plaintiff's patent.

7.  This order shall remain in effect for fourteen days from its time of entry.

8.  To cover any damages resulting from improper or wrongful restraint, Plaintiff shall provide the court with security in the amount of $10,000.

9.  After Plaintiff's counsel has received confirmation from the financial institutions regarding the funds restrained as directed herein, Plaintiff shall comply with Local Rule 6.01(c) by serving on each Defendant by email or similar means of electronic publication the summons, the complaint, this order, the motion for the temporary restraining order (including each motion, brief, affidavit, exhibit, proposed order, and other paper submitted to support the motion for the temporary restraining order), each additional paper the moving party will submit to support converting the temporary restraining order into a

- 21 -

preliminary injunction, and a notice of any hearing.

10. The Clerk shall file this order under seal until further order of the court.

**ORDERED** in Orlando, Florida, at 9:45 AM EDT, on April 9, 2025.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties