UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

TELETIES, LLC,

     Plaintiff,

v.                                  Case No: 6:25-cv-539-JSS-RMN

DEFENDANTS #1-18 AS
IDENTIFIED IN SCHEDULE "A,"

     Defendants.

_____/

## ORDER

Plaintiff moves to convert the temporary restraining order (TRO) previously entered in this case (Dkt. 14; *see also* Dkt. 19) into a preliminary injunction. (Dkt. 18.) On April 29, 2025, the court held a hearing on the motion to convert, which Defendants did not attend despite receiving notice of the hearing. (*See* Dkt. 24.) Upon consideration, for the reasons outlined below, the court grants the motion to convert.

## BACKGROUND

Plaintiff filed the complaint in this case on March 26, 2025. (Dkt. 1.) In the complaint, Plaintiff asserts one count of patent infringement in violation of 35 U.S.C. § 271 against Defendants, which Plaintiff claims are "individuals or business entities who reside in or are headquartered in the People's Republic of China." (Dkt. 1 ¶¶ 3, 23–38.) Plaintiff seeks injunctive and monetary relief, including its legal fees. (*Id.* ¶¶ 31–38.)

Patent records attached as Exhibit B to the complaint show that the design patent was issued on June 11, 2024, is called "FLAT HAIR CLIP," and claims "[t]he

ornamental design for a flat hair clip, as shown and described" in the records.  (Dkt.
1-3 at 2.)  Plaintiff's founder and president, Lindsay Muscato, declares that Plaintiff
"has continuously held title in the . . . [p]atent from [the patent's] issuance until the
present" and that Plaintiff "is and remains the sole owner of all right, title, and interest
in and to the . . . [p]atent."  (Dkt. 13-1 ¶¶ 3, 5.)  According to Ms. Muscato, Plaintiff
has never licensed the patent to anyone, including Defendants.  (*Id.* ¶¶ 8–9.)  Ms.
Muscato states that as the patent's exclusive owner, Plaintiff "sells hair clips that
embody the ornamental design of the . . . [p]atent throughout the United States,
including . . . through its own online storefront and on . . . Amazon.com."  (*Id.* ¶ 7.)

Plaintiff alleges that Defendants are knowingly and willfully making, using,
offering for sale, selling, and importing into the United States for subsequent sale and
use hair clips that infringe the patent.  (Dkt. 1 ¶ 21.)  Defendants purportedly use
Amazon.com to commit the infringement.  (*See* Dkt. 10.)  Exhibit A to the complaint
(also referred to as Schedule A) identifies Defendants by providing their sold-by
names, seller business names, product Amazon Standard Identification Numbers
(ASINs), and product and seller-storefront links, which are Amazon.com web
addresses.  (*Id.*)  A chart supporting Plaintiff's request for preliminary injunctive relief
displays Defendants' allegedly infringing products alongside images from Plaintiff's
patent.  (*See* Dkt. 13-2.)  Review of the chart reveals that for each of Defendants'
products, the product's design is substantially similar to the design protected by the
patent.  (*Id.*)

According to Ms. Muscato, Plaintiff believes that Defendants "are interrelated

or are otherwise working in concert to infringe the . . . [p]atent by having Chinese-based manufactures copy the molds for the design protected by the . . . [p]atent and to import the infringing products into the United States through drop shipments after the infringing products are sold on Amazon.com." (Dkt. 13-1 ¶ 10.) Ms. Muscato declares that Defendants are "causing significant harm to" Plaintiff by "sell[ing] their infringing products at a significantly reduced price" and thus "divert[ing] consumers away from" Plaintiff, as Plaintiff and Defendants both use Amazon.com to sell products with a design protected by the patent. (*Id.* ¶¶ 12–13.) Ms. Muscato further states that Defendants use "inferior materials" to make their products and that Plaintiff's goodwill has been "negatively impact[ed]" as a result. (*Id.* ¶ 14.)

On April 9, 2025, the court largely granted[1] Plaintiff's ex parte motion (Dkt. 13) for a TRO including an asset freeze, and the court authorized expedited discovery and alternative service so Plaintiff could serve Defendants through the email addresses associated with their allegedly infringing Amazon.com accounts. (Dkt. 14.) On April 23, 2025, before the TRO period expired, the court extended the period to May 7, 2025, and it set a hearing on the motion to convert for April 29, 2025, at 2:00 PM. (Dkts. 19, 20.) After Plaintiff furnished the court with the $10,000 security required by the TRO, (*see* Dkt. 14 at 21), Plaintiff served Defendants by email as authorized, submitting proof that it served them with all pleadings to date as of April 22, 2025, (Dkts. 17, 17-1, 17-2), and later, with notice of the hearing, (Dkts. 23, 23-1).

---

[1] The court denied only Plaintiff's request to waive the security requirement imposed by Federal Rule of Civil Procedure 65(c). (Dkt. 14 at 17–18.)

Before the hearing, Plaintiff supplemented the motion to convert with records produced by Amazon pursuant to expedited discovery requests. (Dkts. 22, 22-1.) The records show Defendants' identifying and contact information and account balances. (Dkt. 22-1 at 2–7.)  During the hearing, Plaintiff confirmed that it had notified Defendants of the hearing using the alternative service method authorized by the court, and it argued in support of its motion.  In contrast, Defendants did not appear at the hearing and did not otherwise present to the court any arguments on the motion to convert.

## APPLICABLE STANDARDS

Federal Rule of Civil Procedure 65 governs TROs and preliminary injunctions. *See* Fed. R. Civ. P. 65.  The key difference is that whereas TROs may issue without notice to the adverse party, *see* Fed. R. Civ. P. 65(b)(1), "[t]he court may issue a preliminary injunction only on notice to the adverse party," Fed. R. Civ. P. 65(a)(1). "Every order granting an injunction and every [TRO] must . . . state the reasons why it issued[,] . . . state its terms specifically[,] and . . . describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."  Fed. R. Civ. P. 65(d)(1).  Rule 65 further states: "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c); *accord* M.D. Fla. R. 6.01(a)(4) (requiring a TRO motion to "include . . . a precise and verified explanation of the amount and form of the required

security"); M.D. Fla. R. 6.02(a)(1) (requiring the same of a preliminary injunction motion).

"A TRO or preliminary injunction is appropriate where the movant" satisfies four requirements: (1) "there is a substantial likelihood of success on the merits," (2) "the TRO or preliminary injunction is necessary to prevent irreparable injury," (3) "the threatened injury outweighs the harm that the TRO or preliminary injunction would cause to the non-movant," and (4) "the TRO or preliminary injunction would not be averse to the public interest." *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034 (11th Cir. 2001); *accord* M.D. Fla. R. 6.01(b), 6.02(a)(1). Preliminary injunctive relief "is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to each of the four prerequisites." *Wall v. Ctrs. for Disease Control & Prevention*, 543 F. Supp. 3d 1290, 1292 (M.D. Fla. 2021) (alteration adopted and quotations omitted).

Relatedly, a "request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 987 (11th Cir. 1995). An order freezing assets should provide a procedure for the person whose assets are frozen to petition the court to modify the asset freeze. *See id.* at 987–88 (affirming an asset freeze in a trademark infringement case because the asset freeze "expressly allowed [the defendants] to petition the district court to modify the freeze" (citing *Fed. Trade Comm'n v. Atlantex Assocs.*, 872 F.2d 966, 970–71 (11th Cir. 1989))).

## ANALYSIS

The court discusses the four requirements for a preliminary injunction—likelihood of success on the merits, irreparable injury, balance of harms, and public interest—and then explains why continuing the asset freeze is warranted.

### a. Likelihood of Success on the Merits

The Patent Act permits courts to "grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. "In seeking a preliminary injunction pursuant to section 283, a patent holder must establish a likelihood of success on the merits both with respect to validity of its patent and with respect to infringement of its patent." *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451 (Fed. Cir. 1988).

The Patent Act creates a presumption of validity for a patent. 35 U.S.C. § 282(a) ("A patent shall be presumed valid. . . . The burden of establishing invalidity of a patent . . . shall rest on the party asserting such invalidity."). "In the context of a preliminary injunction, while the burden of proving invalidity is with the party attacking validity, the party seeking the injunction retains the burden of showing a reasonable likelihood that the attack on its patent's validity would fail." *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003) (quotation omitted). Plaintiff has met that burden by showing that the patent went through a rigorous examination, with the examiner considering numerous references. (*See* Dkt. 1-3 at 2–3; Dkt. 13 at 6; Dkt. 18 at 4–5.) *See Grinnell Corp. v. Am. Monorail Co.*, 285 F. Supp. 219, 225 (D.S.C.

1967) ("It is abundantly evident from the file history of the . . . patent that the application was subjected to rigorous examination. . . . Thus[,] the . . . application is entitled fully to the presumption of validity accorded by the statute . . . .").

A defendant infringes a design patent when "during the term" of the patent, "without license of the owner," the defendant either "applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale" or "sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied." 35 U.S.C. § 289. "Determining whether a design patent is infringed is a two-step process. First, when appropriate, the design patent's claims are construed. Second, the patented design is compared to the" allegedly infringing product. *XYZ Corp. v. Individuals*, 668 F. Supp. 3d 1268, 1273–74 (S.D. Fla. 2023) (quoting *Pride Fam. Brands, Inc. v. Carl's Patio, Inc.*, 992 F. Supp. 2d 1214, 1223–24 (S.D. Fla. 2014)). As to the first step, claim construction, "a design is better represented by an illustration 'than it could be by any description[,] and a description would probably not be intelligible without the illustration.'" *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc) (quoting *Dobson v. Dornan*, 118 U.S. 10, 14 (1886)). Thus, here, the court looks to the images in Plaintiff's patent to construe the claim. (*See* Dkt. 1-3.)

As to the second step, comparison, "[t]he 'ordinary observer' test is the sole test for determining whether a design patent has been infringed." *XYZ*, 668 F. Supp. 3d at 1274 (quoting *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Access., Inc.*, 942 F.3d 1119, 1129 (Fed. Cir. 2019)). Under this test, "if, in the eye of an ordinary observer,

giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Gorham Co. v. White*, 81 U.S. 511, 528 (1871).  Minor differences between a patented design and an allegedly infringing design do not foreclose a finding of infringement.  *See Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010).  Based on Plaintiff's chart offering side-by-side comparisons of Defendants' products and Plaintiff's patent, (*see* Dkt. 13-2), the court concludes, in view of the products' curves, prongs, overall shapes, and other design features, that under the "ordinary observer" test, Defendants' products are substantially similar to the design protected by the patent.

Plaintiff can likely establish the validity of its design patent as well as Defendants' infringement of the patent.  Accordingly, Plaintiff has demonstrated a substantial likelihood of success on the merits to obtain a preliminary injunction.

### b.  Irreparable Injury

For the irreparable injury requirement, the party seeking the preliminary injunction must establish that "the injury is immediate and is not compensable by monetary damages.  Even when considered under traditional equitable rules, however, the existence of a likely infringer in the market may" satisfy this requirement "because of the difficulty of protecting a right to exclude through monetary remedies."  *Tiber Labs., LLC v. Hawthorn Pharms., Inc.*, 527 F. Supp. 2d 1373, 1381 (N.D. Ga. 2007) (quotation omitted).  Plaintiff has identified Defendants as multiple likely infringers

sharing an online market with Plaintiff and has submitted evidence that Defendants are causing Plaintiff harm by using inferior materials—to the detriment of Plaintiff's goodwill—to sell products at reduced prices, thereby diverting consumers from Plaintiff. (Dkt. 13-1 ¶¶ 11–15.) Consequently, Plaintiff has shown that a preliminary injunction is required to prevent irreparable injury. *See Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) ("[T]he loss of customers and goodwill is an 'irreparable' injury."). Further, as Plaintiff explained at the hearing, the records supplementing the motion to convert, (*see* Dkt. 22-1), bolster Plaintiff's claim of irreparable injury.

### c. Balance of Harms

Requiring a patent holder "to compete against its own patented" product such that irreparable injury occurs "places a substantial hardship" on the patent holder. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011). In contrast, "an infringer of [intellectual property] cannot complain about the loss of ability to offer its infringing product." *WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594, 621 (S.D.N.Y. 2011) (collecting cases); *accord i4i L.P. v. Microsoft Corp.*, 598 F.3d 831, 863 (Fed. Cir. 2010) ("The district court's analysis [of the balance of harms] properly ignored the expenses [the defendant] incurred in creating the infringing products. Similarly irrelevant are the consequences to [the defendant] of its infringement, such as the cost of redesigning the infringing products. . . . [N]either commercial success, nor sunk development costs, shield an infringer from injunctive relief. [The defendant] is not entitled to continue infringing simply because it successfully exploited its

infringement." (citations omitted)).  Accordingly, because Plaintiff has shown a substantial likelihood that it is competing in its online marketplace against products—sold by Defendants—that infringe its patented design, Plaintiff has established that its threatened injuries outweigh the harms that a preliminary injunction would cause Defendants.  *See XYZ*, 668 F. Supp. 3d at 1276 ("[The p]laintiff faces hardship from loss of sales and his inability to control his reputation in the marketplace.  By contrast, [the d]efendants face no hardship if they are prohibited from the infringement of [the p]laintiff's copyrights and patents which [consists of] illegal acts.").

### d. Public Interest

Given "the importance of the patent system in encouraging innovation," *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006), the public has a "general interest in upholding patent rights," *i4i*, 598 F.3d at 863.  Further, as Plaintiff explains, absent a preliminary injunction, consumers "will continue to be confused and misled by the infringing acts of Defendants[,] and the market will be flooded with inferior infringing products." (Dkt. 18 at 8.)  Because "the public interest is served by preventing consumer confusion in the marketplace," *Davidoff & Cie, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001), Plaintiff has demonstrated that a preliminary injunction preventing Defendants from infringing Plaintiff's design patent would serve the public interest.  *Cf. Alston v. www.calculator.com*, 476 F. Supp. 3d 1295, 1323 (S.D. Fla. 2020) ("[W]hen a trademark is shown to have been infringed, the public's right to be free of confusion . . . is infringed[,] too[.]" (citation omitted)).

### e. Asset Freeze

By satisfying the requirements for likelihood of success, irreparable injury, balance of harms, and public interest, Plaintiff has established the need to convert the TRO into a preliminary injunction. *See Wall*, 543 F. Supp. 3d at 1292. To preserve the status quo, Plaintiff seeks to continue the freeze on Defendants' assets related to the allegedly infringing products that Defendants sell through Amazon.com. (Dkt. 18 at 8–9; *see* Dkt. 10; Dkt. 13 at 9–10.)

When a plaintiff seeks equitable relief, a court can order an asset freeze "to assure the availability of permanent relief," *Levi Strauss*, 51 F.3d at 987, and "the district courts' equitable powers [to freeze assets] apply even more broadly when the public interest is involved," *AT&T Broadband v. Tech Commc'ns, Inc.*, 381 F.3d 1309, 1317 (11th Cir. 2004). Here, the remedies sought in the complaint include equitable relief: namely, temporary, preliminary, and permanent injunctive relief to restrain Defendants from infringing, and assisting others in infringing, Plaintiff's design patent and to prevent non-party financial service providers, e-commerce platforms, web hosts, search engines, and the like from facilitating Defendants' infringement. (Dkt. 1 ¶¶ 32–33.) Further, Plaintiff has indicated its intention to seek an equitable accounting of Defendants' profits, (Dkt. 13 at 9; Dkt. 18 at 8), to support its prayer for monetary "damages under . . . 35 U.S.C. § 289," (Dkt. 1 ¶ 34). *See* 35 U.S.C. § 289 (making the infringer of a design patent "liable to the owner [of the patent] to the extent of [the infringer's] total profit, but not less than $250, recoverable in any United States district court having jurisdiction of the parties"); *see also Hard Candy, LLC v. Anastasia Beverly*

*Hills, Inc.*, 921 F.3d 1343, 1355–59 (11th Cir. 2019) (explaining that an accounting of profits is an equitable remedy).

Plaintiff states that "[i]n light of the strong likelihood that [D]efendants infringe the . . . [p]atent, [Plaintiff] has a good[-]faith belief that . . . Defendants will off-shore or hide their ill-gotten assets beyond the jurisdiction of this [c]ourt unless those assets continue to be restrained." (Dkt. 18 at 8–9.) The court agrees. *See Purple Innovation, LLC v. Individuals*, No. 24-24008-CIV-MARTINEZ, 2024 WL 5399073, at *3, 2024 U.S. Dist. LEXIS 239537, at *8 (S.D. Fla. Oct. 25, 2024) (granting an asset freeze because, "[i]n light of the inherently deceptive nature of the counterfeiting business, and the likelihood that [the d]efendants have violated federal trademark and patent laws, [the p]laintiff has good reason to believe [the d]efendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this [c]ourt unless those assets are restrained."). The public's interests in enforcing patent rights and counteracting consumer confusion, discussed above, lend additional support to preserving the asset freeze. *See AT&T*, 381 F.3d at 1317.

Any person whose assets are frozen pursuant to this order may petition the court to modify the asset freeze by filing a motion in this case in compliance with the Local Rules. *See Levi Strauss*, 51 F.3d at 987–88; *Purple Innovation*, 2024 WL 5399073, at *5, 2024 U.S. Dist. LEXIS 239537, at *14 ("Any [d]efendant or financial institution account holder subject to this [o]rder may petition the [c]ourt to modify the asset restraint set out in this [o]rder[.]").

## CONCLUSION

Accordingly:

1. Plaintiff's motion to convert the TRO into a preliminary injunction (Dkt. 18) is **GRANTED**.

2. Defendants, their respective officers, directors, employees, agents, subsidiaries, and distributors, and all other persons in active concert or participation with Defendants are preliminarily enjoined from

   a. manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the ornamental design embodied in Plaintiff's patent (Patent Number D1,031,161), including any reproduction, copy, or colorable imitation thereof;

   b. communicating, directly or indirectly, with any person or persons

      i.   from whom Defendants purchased or obtained products bearing the ornamental design embodied in the patent,

      ii.  to whom Defendants sold or offered to sell these products, or

      iii. whom Defendants know or reasonably believe to possess, control, or have access to any of these products;

   c. otherwise communicating, directly or indirectly, about this action with any person, except for Defendants' legal representation;

   d. secreting, concealing, destroying, selling off, transferring, or otherwise disposing of

      i.   any products not manufactured or distributed by Plaintiff that bear

the ornamental design embodied in the patent or

    ii.  any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing the ornamental design embodied in the patent; and

  e.  knowingly instructing, aiding, or abetting any other person in engaging in any of the activities referred to in a. through d. above.

3.  During the pendency of this action or until further order of the court, each Defendant shall not transfer any ownership interest of a business if that business has in any way used Amazon.com with respect to products bearing the ornamental design embodied in Plaintiff's patent, including any reproduction, copy, or colorable imitation thereof.

4.  Upon receiving notice of this preliminary injunction, Defendants and any third-party financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms who are providing services for any Defendant, including but not limited to Amazon, Amazon Pay, and PayPal and their related companies and affiliates (collectively, the third-party providers) shall, within five business days after receipt of notice of this preliminary injunction,

  a.  restrain the transfer of all funds, including funds relating to ongoing account activity, held or received for Defendants' benefit or to be transferred into Defendants' respective financial accounts, restrain any other financial accounts tied thereto, and immediately divert those

restrained funds to a holding account for the trust of the court. Such restraining of the funds and the disclosure of the related financial institution account information (as provided below) shall be made without notice to the account owners or the financial institutions until after those accounts are restrained. No funds restrained by this injunction shall be transferred or surrendered by any third-party provider for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this court.

b. provide Plaintiff expedited discovery of

    i. the identity of all financial accounts and subaccounts associated with the stores operating under the identifying information seen in Exhibit A to the complaint, as well as any other accounts of the same customers,

    ii. all known contact information for Defendants, including their identities, locations, aliases, and email addresses, and

    iii. an accounting of the total funds restrained and identities of the financial accounts and subaccounts for which the restrained funds are related.

5. Any Defendant, third-party provider, or other person subject to this injunction may petition the court to modify the asset freeze set forth herein by filing in this case a motion that complies with the Middle District of Florida Local Rules.

6.  This injunction shall apply to all seller accounts, seller identification names, e-commerce stores, domain names, websites, and financial accounts which Defendants are allegedly using to infringe Plaintiff's patent.

7.  This injunction shall remain in effect until the court orders otherwise.

8.  The $10,000 security that Plaintiff furnished to the court in relation to the TRO satisfies Rule 65(c)'s security requirement such that Plaintiff need not provide additional security for the preliminary injunction.

9.  As discussed at the hearing, Plaintiff shall serve copies of this preliminary injunction on Defendants by the same means Plaintiff used to serve the TRO and the notice of the hearing.

**ORDERED** in Orlando, Florida, on May 1, 2025.

_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties